UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| IN RE | Bankruptcy Case No. 11-60010-fra13 |
| MICHAEL LEE McGINNIS, | |
| Debtor. | MEMORANDUM OPINION RE: CONFIRMATION |

An evidentiary hearing on confirmation of Debtor's Chapter 13 Plan of Reorganization was held on March 22, 2011 and the matter was taken under advisement. The Chapter 13 Trustee and the Debtor were each given the opportunity to file post-hearing briefs regarding the confirmability of Debtor's business plan. Having reviewed those memoranda, the record in this case, and relevant law, I find that the Debtor's Pre-Confirmation Amended Plan dated February 1, 2011 (the Plan) cannot be confirmed. My reasons follow.

## BACKGROUND

Debtor filed for chapter 13 bankruptcy on January 3, 2011. Debtor's Plan provides for a monthly plan payment of $200 for six months, $2,350 for twelve months, $3,700 for the next twelve months, and $5,050 for the remaining six months. The money for the plan payments will come from three sources: 1) A business under the name of Oregon Medical Growers, LLC, owned by the Debtor, in which a warehouse would be leased and space would be rented to medical marijuana growers, 2) Profits the Debtor hopes to obtain from his own medical marijuana operation, and 3) Rental income from commercial property in Mesa, Arizona, housing a number of tattoo artists.

// // //

Page 1 - MEMORANDUM OPINION RE: CONFIRMATION

The Plan provides for the sale of the Arizona commercial property by December 31, 2012, but if it is not sold prior to that date the Debtor will continue to make the scheduled plan payments to pay off his plan. The Plan also provides for the sale of real property in Coos Bay adjacent to the property on which Debtor resides. However, Debtor testified at the March 22 hearing that his mother is now living in that property and he no longer plans to sell it.

Schedule A of Debtor's bankruptcy petition indicates that the Arizona commercial property is worth $1,000,000 with secured debt of $6,922 and the real property adjacent to his residence has a value of $250,000 with secured debt of $35,000. Unsecured claims per the Debtor's schedules total $62,192. Schedule B lists a 1959 El Camino and indicates that it is "in pieces, no value." On February 18, 2011 Debtor filed a notice of intent to sell the vehicle to a party in Connecticut for $25,000. At the confirmation hearing on March 1, 2011, Debtor's attorney indicated that the sale had been completed and that the Debtor needed the sale proceeds for his business. I directed at that hearing that the sale proceeds be held and not spent. At the March 22 hearing, Debtor testified that the vehicle had already been sold and $14,079 of the net proceeds of $22,500 had been spent on the marijuana warehouse operation prior to the date the notice of intent to sell was filed with the court on February 18.

At the end of the March 22 hearing I expressed some doubt as to whether a plan could be confirmed which relied upon the cultivation and sale of a product (marijuana) which is still classified as a Schedule 1 drug, and thus illegal for most purposes, under federal law. The Trustee and the Debtor were invited to brief this issue and have done so.

// // //
// // //
// // //
// // //
// // //
// // //
// // //

DISCUSSION

<u>11 U.S.C. § 1325(a)(3)</u>[1]

A. Debtor's Proposed Operations Violate Federal Law

Section 1325(a)(3) requires that a chapter 13 "plan has been proposed in good faith and not by any means forbidden by law." I interpret this as meaning, at least in part, that in order for a plan to be confirmed, it must be in compliance with not only Title 11, but other applicable federal and state law. See 8 Collier on Bankruptcy ¶ 1325.04[2] (16th ed. 2011). Because Debtor's Plan depends on a product the cultivation and sale of which violates federal law[2], I cannot find that the Plan meets the requirements of § 1325(a)(3). Debtor argues that the current Federal administration has stated that it will generally not interfere with medical marijuana operations that are in compliance with state law[3]; however, this does not change the fact that those operations are still illegal under federal law. While a medical marijuana grower who is in compliance with state law may find the risks acceptably small and of little deterrence to his operation, when that grower files bankruptcy, § 1325(a)(3) prevents confirmation of a plan depending on that operation.

// // //

// // //

// // //

---

[1] Unless otherwise specified, all statutory references herein are to the Bankruptcy Code, 11 U.S.C. §§ 101 to 1532.

[2] See 21 U.S.C. § 812(c)(10) designating marijuana as a Schedule 1 controlled substance. 21 U.S.C. §§ 841 to 863 describe prohibited acts involving controlled substances and penalties therefor.

[3] The government's posture may not be all that clear: On June 3, 2011, the United States Attorney for Oregon and 33 of Oregon's 36 District Attorneys released a "Notice to Owners, Operators and Landlords of Oregon Marijuana Dispensaries" stating that "The sale of marijuana for any purpose – including as medicine – violates both Federal and Oregon law and will not be tolerated," and that property used by anyone to cultivate marijuana for sale may be subject to forfeiture. As of the date this opinion was issued, the document could be viewed at http://www.justice.gov/usao/or/Indictments/06032011_Marijuana.pdf. The reader should understand, however, that the Court's decision is based on the statutes cited in this Memorandum, and not the transient policies of agencies charged with enforcement of the criminal laws.

Page 3 - MEMORANDUM OPINION RE: CONFIRMATION

B. Debtor's Proposed Operations Violate State Law

Debtor's Plan depends heavily on projected annual net income of $56,400[4] from Debtor's own medical marijuana grow operation. The profit from this operation, however, is currently not allowed under Oregon's Medical Marijuana Act. O.R.S. 475.304(7) provides that "[a] registry identification cardholder or the designated primary caregiver of the cardholder may reimburse the person responsible for a marijuana grow site for the costs of supplies and utilities associated with the production of marijuana for the registry identification cardholder. No other costs . . . may be reimbursed."[5] Under that provision, the Debtor could be reimbursed only for supplies and utilities, estimated by Debtor at $15,600, and any additional payments would be illegal. O.R.S. 475.316 makes this explicit by providing at subsection (d) that no person authorized to possess, deliver, or produce marijuana for medical use under the Medical Marijuana Act is exempted from Oregon's general drug laws if that person "[d]elivers marijuana *for consideration* to any individual, even if the individual is in possession of a registry identification card." [emphasis added]. Debtor testified that he has been lobbying the Oregon legislature for changes in law that would allow for the sale of medical marijuana at a profit. I take judicial notice of the fact that the legislature has not made such changes to the law and that a ballot measure was defeated in November, 2010 that would have allowed for medical marijuana to be sold in dispensaries.

Feasibility - 11 U.S.C. § 1325(a)(6)

Code § 1325(a)(6) provides as a condition of confirmation that "the debtor will be able to make all payments under the plan and to comply with the plan." Because the sale and cultivation of marijuana as envisioned in Debtor's Plan is illegal under federal law, I cannot find that the predicted income stream from the marijuana operations is reasonably certain to produce sufficient income to fund the Plan, despite federal authorities' current position regarding medical marijuana operations. Moreover, Debtor's own medical

---

[4] Annual gross income of $72,000 less expenses of $15,600 for supplies and utilities.

[5] It is unclear whether rental expense is included in the term "costs of supplies and utilities associated with the production of marijuana"; if it is not, Debtor's business plan respecting the grow site rental operation is untenable, because his tenants would not be able to recoup the costs of renting space for growing.

Page 4 - MEMORANDUM OPINION RE: CONFIRMATION

marijuana grow operation would require a change in Oregon law before it would be in compliance with state law. While Debtor has testified that he has been lobbying to have changes made to the Oregon Medical Marijuana Act, there is no evidence that changes as sought by the Debtor are imminent.

Other Matters

The Debtor's undervaluing of the El Camino in his schedules[6] and the sale of property of the estate and use of the majority of the proceeds without court permission also have implications with regard to Debtor's good faith. Debtor's testimony that he believed he had permission to sell the vehicle I find to be dubious. However, because of Debtor's equity in real property, he is required to pay unsecured creditors in full. If Debtor can propose an amended Plan of Reorganization which meets the requirements of the Bankruptcy Code, I would be prepared to allow its confirmation.

## CONCLUSION

For the reasons given, Debtor's Amended Plan of Reorganization dated February 1, 2011, cannot be confirmed. An order will be entered denying confirmation and providing that an amended plan be filed within 28 days. Should Debtor fail to file an amended plan in the time allowed, the Court will enter an order to show cause why the Debtor's bankruptcy case should not be dismissed or converted to one under chapter 7.

FRANK R. ALLEY, III
Chief Bankruptcy Judge

---

[6] While the El Camino sold for $25,000 shortly after Debtor filed bankruptcy, he testified at the March 22, 2011 hearing that he sold it at a bargain price to obtain a quick sale and, in fact, it could have been worth twice what he received for it. Schedule B listed the vehicle as worth nothing.

Page 5 - MEMORANDUM OPINION RE: CONFIRMATION